Bell, J.
The same two questions presented by the contentions set out in the order of the Tax Commissioner are presented to this court by the appellant taxpayer.
As to the first of these questions, the general rule is often said to be that the order of a referee in bankruptcy allowing or disallowing a claim is a judgment and the order is res judicata in subsequent proceedings. The basis for such a rule is well set forth, as follows, in Hargadine-McKittrick Dry Goods Co. v. Hudson, 122 F., 232:
.“The plaintiff having voluntarily gone into the bankrupt court, and submitted itself 'to the jurisdiction of that court, and filed its claim against the bankrupt’s estate founded on the judgment here in suit, and that court having disallowed the claim and entered judgment accordingly, and that judgment remaining in full force and virtue, constitutes a complete bar to this action. It is not material upon what ground that court rested its judgment. It unquestionably had jurisdiction of the parties and the subject matter, and, if either party conceived its judgment was for any reason erroneous, the remedy was by appeal, and not by a suit on the same cause of action in another jurisdiction against the bankrupt.”
For similar statements, see Bemington on Bankruptcy, Section 1003; 3 Collier on Bankruptcy (14 Ed.), 191; 6 American Jurisprudence, 848, Bankruptcy, Section 512; United States v. Coast Wineries, Inc., 131 F. (2d), 643; In re Universal Rubber Products Co., 25 F. (2d), 168; In re Barrett & Co., 27 F. (2d), 159; Buffum v. Maryland Casualty Co., 88 F. (2d), 547; Lesser v. Gray, 236 U. S., 70, 59 L. Ed., 471, 35 S. Ct., 227.
The statement of the general rule, with the citation of the above authorities in support thereof, does not, however, so easily dispose of the problem here under consideration. In all the above-cited eases, either a discharge in bankruptcy had been granted (Lesser v. Gray, supra; Hargadine-McKittrick Dry Goods Co. v. Hudson, supra) or the action was still pending in the bankruptcy court at the time the question of res judi *270 cata was raised (In re Universal Rubber Products Co., supra; Buffum v. Maryland Casualty Co., supra; In re Barrett & Co., supra), and in at least one case (Hargadine-McKittrick Dry Goods Co. v. Hudson, supra) not only was a discharge in bankruptcy eventually ordered but an actual appeal from the disallowance of a claim by the referee had been taken earlier to the District Court and such disallowance had been affirmed.
It would appear that none of the cases cited answers what we consider to be the proper statement of the first question presented to us, i. e., Is an order of a referee in bankruptcy disallowing a claim res judicata in the prosecution of that claim after the bankruptcy action has been dismissed without prejudice on motion of the alleged bankrupt?
Neither counsel herein has cited any case directly in point. Perhaps the closest case that we have been able to find is Ostler Land & Livestock Co. v. Brough, 111 Utah, 336, 178 P. (2d), 911, decided in 1947 by the Supreme Court of Utah.
In that case a bankruptcy proceeding had been instituted and the bankruptcy court after appraisal had set off a homestead exemption to the bankrupt. Objections were filed, a hearing was had and the order of appraisal was approved by the court. The time for appeal1 from such order expired. The bankrupt then transferred the property to his wife. A motion was later filed in the bankruptcy court by a judgment creditor for a reappraisal of the property. When the matter came on for hearing, the entire proceeding was dismissed without prejudice. An action was then brought in the state court by the judgment creditor to set aside the transfer to the wife as fraudulent. The trial court determined that the setting off of the homestead exemption was not a valid and subsisting order because the bankruptcy proceeding was dismissed without prejudice, i. e., that the dismissal by the bankruptcy court of the bankruptcy proceeding carried with it the order setting aside as exempt the property involved, and that, therefore, such proceeding did not free it from plaintiff’s judgment lien.
In reversing the judgment of the trial court, the Supreme Court said, in part:
“It is well settled that once a bankruptcy court has set aside the exempt property of the bankrupt, that property is no *271 longer under the jurisdiction and control of the bankruptcy-court, and its disposition becomes a matter of state law. See 11 U. S. C. A., Section 24, note 142, commencing on page 344, and cases cited thereunder. But as long as the proceedings in bankruptcy court are extant, a common judgment creditor could not issue execution in the state court.
“The respondent having allowed the setting aside of the exempt property by the bankruptcy court to become a final judgment and it then no longer being under the jurisdiction of the bankruptcy court, it is our opinion that the court erred when it held that the order of the bankruptcy court approving the appraisal and setting aside the homestead exemption was of no force and effect because the bankruptcy proceedings had been dismissed without prejudice.”
Although both in the opinion and the syllabus the Utah court talks in terms of res judicata, the real emphasis of the decision is placed on the fact that by the actions of the bankruptcy court the property had become subject to the jurisdiction of the state court. Sneh emphasis is seen in the following paragraph of the majority opinion:
“However, the fact that the bankruptcy court’s appraisal and setting apart of the homestead property was a final judgment even though the proceedings were later dismissed without prejudice it can have no effect on respondent’s cause of action. The only effect that judgment had as far as we are concerned under the facts of this case, is to take that property out of the jurisdiction of the bankruptcy court, and make it again subject to the law of our state and the only question Ave have to determine is whether under our law, the bankruptcy court having appraised the property and having set it aside as a homestead exemption, Avas the respondent herein precluded from proving at a, later date that the value of the exempt property had increased in value at the time of its transfers without consideration and that such transfers were a fraud on creditors?”
The actual decision of the case was to the effect that the evidence introduced by the judgment creditor was insufficient to show an increase in valúe.
But, interesting from the standpoint of our question here are the concurring opinions written by Wolfe, J., and Mc-Donough, C. J. The former said:
*272 “In the case at bar the bankruptcy proceedings did not affect the plaintiff’s judgment against the defendant. That judgment was taken under the jurisdiction of the bankruptcy court but when the proceedings were dismissed without prejudice the judgment emerged therefrom the same as it has [had] been before the proceedings were commenced.”
Of like import is the following statement of Chief Justice McDonough:
“* * * I am of the opinion that under the facts of this case, where the debtor by amended petition asked to be adjudicated a bankrupt and subsequently voluntarily, with the consent of the creditor, procured a dismissal of the proceedings, the dismissal carried the entire matter, including incidental findings and orders, out of court, and left the debtor in the same position, in so far as affecting the rights of his creditors is concerned, as though no proceedings in bankruptcy had been initiated.”
Such a conclusion seems to us to be right, both in law and in reason. A dismissal without prejudice leaves the parties as if no action had been brought at all. It gives to the complaining party the right to state a new case, if he can. But it takes away no right of defense to such suit save that which might be based on the bar of the first action. Although there is a paucity of law as to the effect of a voluntary dismissal without prejudice of a bankruptcy proceeding in relation to previous orders made therein, there is no dearth of authority as to the general rule on the subject.
“Where an action or proceeding is dismissed without prejudice, rulings preceding the final judgment or decree of dismissal are, as a general proposition, not capable of becoming res judicata.” 149 A. L. R., 561. See, also, annotation, 11 A. L. R. (2d), 1407, 1411; 1 Remington on Bankruptcy, 550, Section 385; 17 American Jurisprudence, 158, Section 86; Maryland Casualty Co. v. Latham, 41 F. (2d), 312; Allen v. Southern Ry. Co., 218 S. C., 291, 62 S. E. (2d), 507.
We are unable to find any valid reason why such a rule should not apply to a bankruptcy proceeding. Conceding that a bankruptcy proceeding is a special proceeding, in the absence of a statutory provision to the contrary, it is nevertheless subject to the same rules as any other action and is specifically *273 made subject to the federal rules of civil procedure. (Order No. 37, General Orders in Bankruptcy, effective February 13, 1939.)
To come to any other conclusion would be to say, in effect, that each ruling in a bankruptcy proceeding becomes res judicata, without regard to the ultimate disposition. Or, in other words, that a bankruptcy proceeding consists of a series of independent proceedings rather than a single proceeding. The courts, however, have held otherwise. In Wiswall v. Campbell et al., Assignees, 93 U. S., 347, 23 L. Ed., 923, the court said that “a proceeding in bankruptcy, from its commencement to its close upon the final settlement of the estate, is but one suit.”
Furthermore, it is difficult to see how the claim of res judicata can be made in the face of the control the bankruptcy court retains over its orders and the power it has to reconsider either the allowance or disallowance of a claim so long as a cause remains under its control and irrespective of any time for appeal. See Wright v. Board of Public Instruction, 142 F. (2d), 577; Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U. S., 131, 81 L. Ed., 557, 57 S. Ct., 382.
One other consideration motivates our conclusion. If preceding orders made in a voluntary bankruptcy proceeding did not fall with the voluntary dismissal without prejudice on motion of the alleged bankrupt, the unscrupulous petitioner in bankruptcy would be able to secure for himself many of the benefits of a bankruptcy proceeding without subjecting himself to any of the detriments.
We conclude,' therefore, that in the absence of any specific provision of the Bankruptcy Act contrary to the general rule relating to voluntary dismissals and the resultant effect on prior orders, an order of a referee in bankruptcy disallowing a claim is not res judicata unless the proceeding terminates in a discharge or an involuntary termination which has the effect, so far as the bankrupt’s rights are concerned, of a denial of a discharge. In other words, where a referee in bankruptcy disallows a claim such disallowance is not res judicata, where the proceeding is voluntarily dismissed by the alleged bankrupt without prejudice.
It thus becomes necessary to determine whether the basic *274 assessment made by the Tax Commissioner was “illegal” or “erroneous” and whether it may be refunded under the provisions of Section 5739.07, Revised Code.
A typical contract made by the taxpayer and one of its customers appears from the exhibits in the record as'follows:
“Balance on prev. contract $34.00
“Oil the 11 x 14 toned portrait 22.50
‘ ‘ 1 — 11 x 14 — 3 inch mahogany frame 14.00
“7 — 5 x 7 folders 10.50
“Tax 1.41
$82.41
“Pd. 6/12 5.41
$77.00”
Testimony indicates that sales tax stamps at the rate of 3 per cent were cancelled when the $5.41 was paid on June 12. The record indicates further that as additional payments were made on the contract stamps at the rate of 3 per cent of the amount of each payment were cancelled.
The Tax Commissioner, upon audit of the taxpayer’s books and records, determined that the gross contract price was the sales-tax base in each transaction and proceeded to make the assessment here under discussion by examining all the contracts and ascertaining the total amount of sales tax noted thereon. Credit was given the taxpayer for prepaid tax receipts can-celled and deficiency payments made.
If a sale was made at the time the above contract was entered into and if the sales tax noted therein was due the state of Ohio, then obviously the assessment here under discussion was legal and was not in error.
Section 5739.01, Revised Code, in those portions pertinent hereto, reads as follows:
“(B) ‘Sale’ and ‘selling’ include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred * * * for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever
*275 ¿<* # *
“(H) ‘Price’ means the aggregate value in money of any thing paid or delivered, or promised to be paid or delivered, by a consumer to a vendor in the complete performance of a retail sale * * (Emphasis added.)
At the time of the execution of this contract, the customer of the taxpayer became obligated to pay his promissory note, and the taxpayer was obligated reciprocally to furnish him some photographs upon the payment of that note. One-became obligated to pay a “price,” the other became obligated to “transfer tangible personal property. ’ ’ The emphasized language in Section 5739.01, Revised Code, as quoted above, is meaningless unless it is construed to mean that a “sale” occurs upon the assumption of such mutual obligations.
Since a “sale” occurred at that time, and since “the tax applies and is collectible when the sale is made, regardless of the time when the price is paid or delivered” (Section 5739.02, Revised Code), the assessment by the Tax Commissioner was neither illegal nor erroneous.
To hold otherwise would tend to put the state of Ohio in the business of underwriting the credit and installment sales business of the taxpayer to the extent that if the taxpayer’s customer fails to complete his payments the state must forego its tax on the unpaid and perhaps uncollectible portion of the customer’s account. We do not apprehend that the General Assembly contemplated the state’s entrance into such a hazardous and uncertain undertaking.

Decision affirmed.

JJ Weygandt, C. J., Zimmerman, Taft, Matthias and Herbert, concur.
Peck, J., not participating.